Martin A. Bihn (014338)
Donna M. McDaniel (017366)
**BIHN & McDANIEL, P.L.C.**
2600 N. Central Ave, Suite 1775
Phoenix, Arizona 85004
Tel:    (602) 248 9779
Fax:   (602) 248 9749
Email:         MBihn@phxlegal.com
               Donna@phxlegal.com
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Manriquez; | CV: |
| Plaintiffs, | **COMPLAINT** |
| vs. | **AND** |
| | **JURY DEMAND** |
| Town of Superior, a political subdivision, Joel Christian Ensley, Bryan Lawrence, Richard H. Mueller, and Anthony Doran; Defendants. | |

Plaintiff, for his complaint against defendants alleges as follows:

### Introduction

1.   Individual defendants are four small town police officers with extensive professional misconduct records. Defendants were disappointed when they found nothing after executing a search warrant on a suspect's motel room. Defendants then decided to search an entirely different location, a home owned by suspect's uncle. Using the warrant for the motel room, defendants went to an entirely different address, plaintiff's home, and "served" the warrant at 11:30 at night. Plaintiff is a small disabled man in his mid 50's who weighs120 pounds. The four officers entered plaintiff's home, knocked plaintiff to the floor

then and then brutally beat and tased plaintiff.    Plaintiff was taken by ambulance to the hospital.  Plaintiff now brings this 42 USC 1983 action against defendants.

### Parties, Venue & Jurisdiction

2. Plaintiff Richard Manriquez is disabled and lives alone in his home at 711 West Sonora Street in Superior Arizona.

3. Defendant Town of Superior is a body politic.

4. Defendant Joel Christian Ensley ("Ensley") is an Arizona resident and is employed as a police officer with the Town of Superior. Ensley had been placed on the Gila County *Brady* list for misconduct related to a false warrant affidavit and had been fired by a second law enforcement agency for lying on his employment application.

5. Defendant Bryan Lawrence ("Lawrence") is an Arizona resident and is employed as a police officer with the Town of Superior.  Lawrence is on the Pinal County *Brady* list and was suspended by AZPOST for 6 months for dishonesty when he lied to a police supervisor.

6. Defendant Richard H. Mueller ("Mueller") is an Arizona resident and was formerly employed as a police officer with the Town of Superior. Mueller is on the Pinal County *Brady* list and was suspended by AZPOST for 1 year for engaging in malfeasance misfeasance or nonfeasance in office for engaging in a drunken off-duty assault.

7. Defendant Anthony Doran ("Doran") is an Arizona resident and was employed as a police officer with the Town of Superior. Doran was suspended by AZPOST for six months for engaging in malfeasance misfeasance or nonfeasance in office. Doran was fired by the Town of Superior earlier this year.  Doran was fired after the Town discovered

that Doran: (1) maintained a secret 36 gigabyte cache of pornography on his work computer, some of which was apparently illegal child pornography, (2) used his Officer Body Camera make a video himself having sex in uniform while on duty, and (3) used his Officer Body Camera to make additional sexually explicit videos of himself.

8. Defendants caused events to occur within Arizona out of which this matter arises.

9. This Court has jurisdiction of Plaintiff's federal law claims pursuant to 28 USC § 1331.

**Common Factual Allegations**

10. This case began, not with Plaintiff Richard Manriquez, but with defendants' questionable arrest of John Soriano for possession of a pipe.

11. Around 2:30pm on August 20, 2016 defendant Lawrence stopped a vehicle in Superior for having a cracked windshield.

12. The vehicle was owned and driven by Steve Olmos.

13. John Soriano was a passenger.

14. Defendant Lawrence called for defendant Ensley and two other officers to join him at the traffic stop with a police dog.

15. The dog alerted to possible presence of narcotics.

16. Officers searched the vehicle.

17. Officers discovered 0.5 grams of marijuana and a glass pipe in truck's center console.

18. Officers arrested Olmos and Soriano.

19. Officers charged Olmos with possession of marijuana.

20. Olmos admitted that he owned the pipe.

21. Soriano vehemently denied owning the pipe.

22. Nevertheless, officers charged Soriano with possession of drug paraphernalia, the pipe.

23. Officers searched Soriano. They found no drugs.

24. Defendant Ensley found a room key for a local motel in Soriano's pocket.

25. Olmos and Soriano were taken into custody and transported to the Pinal County Jail.

26. Officers then decided to obtain a search warrant for Soriano's motel room.

27. Officers believed that Soriano lived at the motel.

28. Defendant Ensley prepared the affidavit in support of the warrant.

29. Instead of submitting the written search warrant affidavit for the court to review during business hours, Ensley waited until 9:30 pm to urgently seek a "telephonic" warrant.

30. Ensley's affidavit failed to establish probable cause for the search as it contained false and misleading information, and lacked verifiable facts or reliable witnesses linking Soriano to any drug sales or other illegal conduct at the motel.

31. Ensley based his probable cause to search the motel on:

(1) his <u>belief</u> that ***four months earlier*** Soriano had dropped a baggie of meth a block away from the motel;

4

  (2) that two weeks earlier, a woman, whose identity is unknown to Ensley, purportedly told Ensley that she <u>believed</u> Soriano was selling meth from the motel; and

  (3) the fact that Soriano was residing at that motel.

32. The Justice of the Peace listened to defendant Ensley read his affidavit over the telephone and authorized the search of the motel.

33. Defendants Ensley, Lawrence, Doran and Mueller executed the warrant on the motel room.

34. They discovered a 45 year old woman, her 12 year old daughter, a 25 year old woman, a 24 year old male and the odor of recently smoked marijuana.

35. Defendants discovered a small quantity of marijuana and they arrested the 24 year old male for possession of a shard of meth. Officers also found drug paraphernalia.

36. After finishing their search at the motel and finding nothing of significance, defendants Lawrence, Ensley and Doran decided to try to "amend" the warrant to search a completely different location.

37. The other location was 711 W. Sonora, a residence owned by Plaintiff Richard Manriquez. Manriquez is Soriano's uncle.

38. SPD Officers had no probable cause to search Manriquez's house. Instead of the legally required probable cause, the basis for searching Manriquez's house was, as Ensley wrote in days later in an addendum, "Your Affiant and fellow officers *felt the need to search.*"

39. Defendant Ensley, at defendant Lawrence's urging, made a second telephone call to the Justice of the Peace.

40. In the brief telephone call Ensley misled the Justice of the Peace.

41. The Justice of the Peace still had not seen or read a physical copy of the warrant or of the affidavit.

42. Ensley, who was not under oath, represented to the magistrate that he wanted to amend the search warrant for another location, "the suspect's primary residence which was discussed in the affidavit which is 711 West Sonora."

43. Upon information and belief Ensley deliberately misled the magistrate in several ways: (1) Ensley knew that plaintiff Richard Manriquez (whose primary residence was 711 West Sonora) was not a suspect in the case, and (2) Ensley also knew that the actual suspect, Soriano, resided at the motel and not at 711 W. Sonora.

44. The Justice of the Peace, apparently misled by Ensley, verbally approved the warrant.

45. Ensley's affidavit and additional statements to the magistrate did not establish probable cause to search plaintiff's home at 711 West Sonora.

46. At approximately 11:30 pm defendants Ensley, Lawrence, Mueller and Doran arrived at plaintiff Manriquez' home to serve a warrant.

47. The warrant itself was facially invalid.

48. Defendants Ensley, Lawrence, Mueller and Doran did not actually possess a warrant for plaintiff Manriquez' home, 711 West Sonora.

6

49. Instead, defendants Ensley, Lawrence, Mueller and Doran decided to use the warrant from the motel room (authorizing a search of Room 1 of the Copper Mountain Motel at 577 W. Kiser) and served it on plaintiff Manriquez at 711 W. Sonora.

50. Upon information and belief, as police officers, Ensley, Lawrence, Mueller and Doran knew (or should have read the warrant and recognized) that the warrant was facially invalid.

51. At 11:30 pm defendants lined up on Manriquez' porch to serve the warrant while four other officers surrounded the small house.

52. Lawrence pounded on Manriquez' door and announced that the police had a warrant to search his home.

53. Manriquez first opened his front door and then opened the screen door for the officers.

54. Manriquez was dressed in a t-shirt and shorts and clearly presented no threat to the officers.

55. Once Manriquez opened the screen door, Lawrence attacked Manriquez without giving any prior warning or commands to Manriquez.

56. Lawrence tried to grab Manriquez' arm, to yank Manriquez out of his own home.

57. In response Manriquez jerked his arm away from Lawrence.

58. Lawrence then jumped forward and grabbed Manriquez shirt collar. At the same time, Mueller and the other defendants stormed in and knocked Manriquez to the floor, tearing Manriquez' shirt off.

7

59. The defendants then gang tackled Manriquez.

60. Lawrence sat on Manriquez' chest as Ensley held Manriquez' legs.

61. Upon information and belief Lawrence, Ensley, Mueller and Doran all participated in beating Manriquez.

62. Doran then tased Manriquez while he was lying on the floor being pummeled by defendants.

63. After beating Manriquez, defendants rolled him over on his stomach and handcuffed his hands behind his back.

64. Defendants then yanked Manriquez to his feet by the handcuffs, painfully wrenching Manriquez' arms and shoulders and causing additional injury.

65. Defendants brought Manriquez outside and photographed him. Attached is true and correct copy of a photograph taken by police moments after they assaulted Manriquez.



8

66.   Defendants then called an ambulance to take Manriquez to the hospital. Attached is a true and correct photograph of Manriquez in the hospital that same night.



67. Defendants then searched 711 W. Sonora and found no narcotics. During the search defendants cut open and destroyed mattresses and pillows in plaintiff's home.

68. Nevertheless defendants seized Manriquez' cellular telephone, pizza cutter, kitchen knife, and address book.

69. Defendants, in violation of A.R.S. § 13-3921, never returned a warrant for 711 W. Sonora warrant to the Justice Court for filing.

70. Defendant Doran prepared "victim's rights" forms for Ensley, Lawrence and Mueller indicating that each had been the victim of a felony aggravated assault by Manriquez.

71. In later defense interviews, Lawrence, Ensley and Mueller all admitted that they had not actually suffered any injuries in their attack on Manriquez.

72. Defendants submitted their police report to the Pinal County Attorney's Office in August 2016.

73. The Pinal County Attorney's Office declined to charge Manriquez with any crime.

74. On March 29, 2017 representatives for Manriquez requested defendants' Police Body Camera video of the incident.

75. It took several weeks for the police department to process the request.

76. Plaintiff received 27 police officer body camera videos taken by defendants on August 28, 2016 covering events from the arrest of Soriano through the search of plaintiff's home.

77. Defendant Doran was solely responsible for downloading and maintaining all Officer Body Camera video for the Superior Police Department.

78. No Officer Body Camera video of defendants' entry into plaintiff's home or of their assault on plaintiff was released to plaintiff.

79. Several weeks after plaintiff's request for Officer Body Camera video (and nearly nine months after plaintiff's beating) defendant Ensley filed a criminal complaint against plaintiff for attempting to possess paraphernalia and interfering with official police activities.

80. In defense interviews defendants Lawrence and Mueller denied punching plaintiff even though in their police supplemental reports they describe the punches used to strike Manriquez.

81. Ensley also denied punching Manriquez and blamed Mueller or Doran for the punches.

82. In defense interviews, Ensley, Lawrence and Mueller all stated that they forgot to turn on their Officer Body Cameras during the service of the warrant and attack on Manriquez.

83. Ensley, Lawrence and Mueller were able to capture hours of Officer Body Camera video footage before and immediately after their assault on Manriquez.

84. The criminal case against Manriquez was heard by the Justice of the Peace who had approved of the telephonic warrant.

85. Plaintiff moved to suppress evidence seized at his home on the grounds that the warrant was facially invalid and lacked probable cause.

11

86. The Justice of the Peace granted plaintiff's motion. All evidence seized pursuant to the invalid warrant was suppressed. The charge based upon the seized materials was dismissed.

## COUNT I

## 42 USC § 1983 FOURTH and FOURTEENTH AMENDMENTS

### Excessive Force

### Against Defendants: Ensley, Lawrence, Mueller, and Doran

87. Plaintiff realleges paragraphs 1 through 86 as if fully set forth herein.

88. Individual defendants were all acting under color of state law and, for the purposes of this claim, are sued in their individual capacities. Individual defendants are "persons" within the meaning of 42 USC § 1983.

89. Defendants acted individually and/or participated in concert and/or set events in motion to deprive plaintiff of his rights, privileges or immunities secured by US Constitution, including but not limited to the Fourth and Fourteenth Amendments.

90. Defendants used excessive and objectively unreasonable force against plaintiff in violation of his Fourth and Fourteenth Amendment rights.

91. Defendants had no probable cause or even reasonable suspicion to believe plaintiff had committed any crime whatsoever.

92. In serving the search warrant defendants were only legally permitted to detain plaintiff.

93. Defendants knew plaintiff, knew he posed no immediate threat to the safety of officers or the public, was not resisting the defendants and was not attempting to evade the defendants when they attacked him.

94. Plaintiff suffered damages as a result of defendants' unconstitutional actions.

95. Defendants acted with reckless and callous indifference to plaintiff's federally protected rights entitling plaintiff to punitive damages against each of them.

## COUNT II

### 42 USC § 1983 FOURTH and FOURTEENTH AMENDMENTS

### Bad Warrant/Illegal Search

### Against Defendants: Ensley, Lawrence, Mueller, Doran

96. Plaintiff realleges paragraphs 1 through 95 as if fully set forth herein.

97. Individual defendants were all acting under color of state law and, for the purposes of this claim, are sued in their individual capacities. Individual defendants are "persons" within the meaning of 42 USC § 1983.

98. Defendants acted individually and/or in concert and/or set events in motion to deprive plaintiffs of their rights, privileges or immunities secured by US Constitution, including but not limited to the Fourth and Fourteenth Amendments.

99. Defendant Ensley misled the Justice of the Peace in a telephone call to obtain his approval to purportedly amend the existing the search warrant in order to search Plaintiff Richard Manriquez' home at 711 West Sonora.

100. The warrant was facially invalid as it did not contain the 711 West Sonora address. In fact, defendants simply recycled the motel warrant and served it on Manriquez.

101. Upon information and belief any reasonably competent law enforcement officer would have recognized that the warrant was facially invalid. Defendants knew or should have known that the warrant was facially invalid.

102. The warrant affidavit was so lacking in any indicia of probable cause as to render official belief in its existence unreasonable.

103. The Justice of the Peace who originally approved of the telephonic warrant granted Manriquez' motion to suppress evidence obtained pursuant to the search because the warrant was facially invalid and lacked probable cause.

104. Pursuant to the illegal warrant, defendants entered and searched plaintiff's home, damaging plaintiff and his property.

105. Defendants acted with reckless and callous indifference to plaintiff's federally protected rights entitling plaintiff to punitive damages against each of them.

## COUNT THREE

### *MONELL* CLAIM AGAINST TOWN

106. Plaintiff realleges paragraphs 1 through 105 as if fully set forth herein.

107. The Town of Superior ("Town") is a "person" within the meaning of 42 USC § 1983.

108. The Town has a municipal policy and/or custom of hiring substandard police officers who have extensive misconduct records at other police agencies.

14

109. The Town's former police chief referred to the Town's police department as an, "island of misfit toys" because it is a "second-chance agency" hiring officers with extensive misconduct records who cannot otherwise get jobs as police officers.

110. The Town hires substandard officers with extensive misconduct records to save money. The Town has deliberately chosen to offer below-market wages for police officers.

111. The Town knows that officers with misconduct records who cannot otherwise get jobs as police officers will accept the below-market wages offered by the Town.

112. The Town has made the deliberate choice to save money by staffing its police department with substandard officers who have misconduct records.

113. Upon information and belief, once defendant Town hires these substandard "second-chance" officers it fails to appropriately train/retrain them in appropriate police practices including warrants and use of force matters.

114. The Town's hiring of substandard second-chance officers and failure to train/retrain them reflects a deliberate and conscious choice by the Town and represents its deliberate indifference to the rights of its inhabitants including plaintiff.

115. The Town's hiring of substandard officers and failure to train them to reasonable standards, particularly in warrants and use of force matters led directly to the defendants officers' depriving plaintiff of his civil rights by: (1) serving a facially invalid warrant (which also was invalid because it lacked probable cause) on plaintiff and then searching his home and destroying his property, and (2) using excessive, unnecessary and unreasonable force on plaintiff when he presented no threat to defendants and defendants, at most, only had legal authority to detain him.

15

116. Had defendant Town hired competent officers and/or retrained their substandard officers to competency in warrants and use of force areas, plaintiff's civil rights would not have been violated.

117. As a result plaintiff has been harmed.

**WHEREFORE**, Plaintiffs pray that this Court enter judgment for the Plaintiff and against each of the Defendants and grant:

A. compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

B. economic losses on all claims allowed by law;

C. special damages in an amount to be determined at trial;

D. punitive damages on all claims allowed by law against individual Defendants and in an amount to be determined at trial;

E. attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law; and,

F. any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

## JURY DEMAND

1. Plaintiff demands a jury trial on all issues.

Dated this 27th day of June, 2018.

                          BIHN & McDANIEL, P.L.C.

                          /s/ Martin A. Bihn

                          _____

                          Martin A. Bihn

BIHN & McDANIEL, P.L.C.
ATTORNEYS AT LAW
SUITE 1775
2600 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85004
(602) 248-9779