# Ex   F

| 3 of 3 | **YAVAPAI COUNTY SHERIFF'S OFFICE** | BOC# **23-10** |
|---|---|---|
| DATE REPORTED 06-11-2010 | **DISPOSITION OF COMPLAINT** | DR# |

Signature of Supervisor / Investigator / Chairperson of Review Board

## DISPOSITION

☐ **EXONERATED** - Investigation established the allegation of complaint did occur, but was justified, legal & proper.

☐ **UNFOUNDED** - Investigation established that complaint or conduct did not occur.

☐ **NOT SUSTAINED** - Investigation failed to produce sufficient evidence to clearly prove or disprove the allegation.

☒ **SUSTAINED** - Investigation established that misconduct did occur.   *Cat IV*

## ADJUDICATION OF COMPLAINT

| | | |
|---|---|---|
| ☐ Written Reprimand | ☐ Demotion / Involuntary Reduction in Grade to: ____ | |
| ☐ Suspension (Hours): ____ | ☐ Over 40-hr Suspension approved: ____ | ☒ Termination Recommendation |
| ☐ Transfer | ☐ OTHER: ____ | |

## NOTIFICATION OF RESULTS:

| | NAME | DATE | YOUR INITIALS |
|---|---|---|---|
| Employee | BRYAN LAWRENCE | *Resigned 7-9-10* | |
| Immediate Supervisor | SGT. PHIL ROUSSELLE | *7.15.10* | *CDT* |
| Area Commander | LT. MARC SCHMIDT | | |
| Bureau Commander | CAPTAIN DAVID RHODES | | |
| Division Commander | COMMANDER SCOTT MASCHER | | |
| Sheriff | | | |
| Human Resources | | | |

| | DATE | INITIALS |
|---|---|---|
| **DISCIPLINE ACCOMPLISHED AS STATED** | *NO* | |
| *Resigned in lieu of term.* | | |
| | | |
| **COMPLAINT CLOSED** | *7.15.10* | *CDT* |

YCSO 008
REV: 6/11/10

Cathy David

| From: | Cathy David |
|---|---|
| Sent: | Thursday, July 15, 2010 10:39 AM |
| To: | Phil Rousselle; Marc Schmidt; David Rhodes |
| Cc: | Scott Mascher |

**Subject:** BOC COMPLETE

BOC # 23-10
Deputy Brian Lawrence

The Brief of Complaint and investigation reviewed by the Board was in reference to Deputy Lawrence providing false information regarding an off-duty injury. On June 18, 2010, Deputy Lawrence was placed on Administrative Leave with pay while further investigation took place.

The report submitted identified Deputy Lawrence lied to his supervisor regarding the incident at least three times and is in violation of Agency Manual Section 3/1200.04, Reasons for Discipline, *E. The representative has falsified any document, record, or statement, related to his/her employment with the Yavapai County Sheriff's Office.*

The DRB certified voting members found that Deputy Lawrence is in violation of Agency Manual **Section 3/1200.09, D, Category IV., 1, b.**, *Falsification of any reports such as, but not limited to, vouchers, official reports, time records, leave records or knowingly making a false official statement whether given under oath or not.*

**Deputy Lawrence resigned from his position on July 9, 2010** after exhausting the appeal process with the Commanders who recommended the Sheriff's Office uphold the Discipline Review Board's recommendation.

The Board recommends this **Sustained** Category IV violation should result in termination with notation in the official personnel file that this individual **is not eligible for rehire.**

This BOC is now completed and will now be filed according the AZ State retention laws.

Thank you.
Cathy David

7/15/2010

# Pre-Action Hearing
# STATEMENT OF FACTS

## Bryan Lawrence

Bryan Lawrence was hired by the Sheriff's Office in the position of Deputy Sheriff in August 2007.

HISTORY
Bryan Lawrence was hired at the rank of Deputy Recruit, and graduated from the academy in December 2007. He was released from probation in June 2008 after receiving a Meets Standards evaluation. He remains in the position of Deputy Sheriff as of this date assigned to the Southern Area Command.

CURRENT EVENT
On 6/11/10, Lt. Schmidt authorized an investigation of Deputy Lawrence reference misleading statements made to a supervisor and taking time off without supervisor approval.

Complaint #1 - Misleading Statements to Supervisor

On 6/9/10, Deputy Bryan Lawrence advised his supervisor he had broken his foot and had seen a doctor in Phoenix. (not-recorded) Deputy Lawrence advised he was fine and could work. On 6/10/10, Deputy Lawrence was asked if he had seen a doctor in Phoenix and he stated he had. (recorded) Deputy Lawrence was requested to obtain a release for duty from the doctor.

On 6/10/10, Deputy Lawrence again called and advised he was short of funds for seeing another doctor. He was again asked if he saw a doctor in Phoenix. Deputy Lawrence stated yes, he had. (not-recorded) On 6/10/10, Deputy Lawrence went to the VA and was diagnosed with a bruised toe.

On 6/17/10, Deputy Lawrence was interview and he admitted he lied about seeing a doctor in Phoenix. He stated he had no excuse. Deputy Lawrence lied to a supervisor three times reference seeing a doctor in Phoenix.

Deputy Lawrence's conduct was found to be a violation of the following YCSO Agency Manuel policies:

4/200.03 MM 4.m- Unbecoming Conduct - Failure to reply truthfully to any question or request for information in any investigation, hearing, agency concern or procedure either written or oral.

1/100.04 D 1 -Mission Statement Integrity in All We DO and Say
Integrity is our standard. We are proud of our profession and will conduct ourselves in a manner that merits the respect of all people. We will demonstrate honest, ethical behavior in all our interactions. We must have the courage to stand up for our beliefs and do what is right. Our actions will instill public trust and a sense and feeling of protection and safety of each individual person of Yavapai County.

Complaint #2 - Taking Time Off Without Supervisor Approval

On 6/10/10, Deputy Lawrence went home early due to his foot injury. At the time, there were three (3) sergeants and one (1) lieutenant on duty. One of his assigned Area sergeants was due to come on duty at 8 pm. Deputy Lawrence checked off at 7:28 pm. Deputy Lawrence did not notify any of these supervisors and admitted to this during the interview on 6/17/10.

7/7/10

**PLADISC 395**

Deputy Lawrence's conduct was found to be a violation of YCSO Agency Manuel:

3/1300.01 A -Time Off - Leave shall be taken with the approval of the supervisor via the chain of command.

3/1300.01 E-Time Off - In the event, an employee is unable to report for an assigned work shift due to illness, injury or bereavement, the employee shall contact their immediate supervisor directly and request approval for the leave.

1. If the employee is unable to contact their assigned supervisor, notification shall be made through the appropriate chain of command or to the on-duty Commander or the Sheriff.

4/200.03 DD H-Specific Rules for Representative - A representative will obtain approval from his supervisor (if not available, the next higher supervisor in the chain of command) prior to taking any time off.

On 6/18/10, Deputy Lawrence was placed on Administrative Leave with pay for the duration of this investigation.

On 6/30/10 the Sheriff's Office Discipline Review Board reviewed the investigation and found that Deputy Lawrence is in violation of Agency Manual Section 3/1200.09, D, Category IV., 1, b., Falsification of any reports such as, but not limited to, vouchers, official reports, time records, leave records or knowingly making a false official statement whether given under oath or not. The Board recommended this Sustained Category IV violation should result in termination.

On 7/6/10, Deputy Lawrence appealed this decision to the Commander level as outlined in the Agency Manual 3/1200. After review of the investigation, decision, and Deputy Lawrence's testimony, the Commanders did not find any evidence that would justify a change in the recommendation by the Discipline Review Board.

As a result, the Sheriff's Office has decided to pursue termination pursuant to Yavapai County Policy and Procedure Manual, 3.07, Disciplinary Actions.

7/7/10

Ex  G

**BEFORE THE**

**ARIZONA PEACE OFFICER STANDARDS AND TRAINING BOARD**

| | |
|---|---|
| Arizona Peace Officer Standards<br>and Training Board<br>　　　　　　　　　　Complainant<br>v.<br>BRYAN S. LAWRENCE,<br>An inactively certified peace officer,<br>　　　　　　　　　　Respondent | No. 10-094-POST<br><br>CONSENT AGREEMENT<br>DECISION AND ORDER |

In the interest of a prompt and speedy settlement of the above captioned matter, consistent with the public interest, statutory requirements and the responsibilities of the Arizona Peace Officer Standards and Training Board (AZ POST), and pursuant to A.R.S. §41-1822(A)(3), 41-1822(C) and 41-1092.07(F)(5), the undersigned parties enter into this Consent Agreement as a final disposition of this matter.

**I. STIPULATED FINDINGS OF FACT**

1.　　Respondent Lawrence became certified as a peace officer on December 7, 2007 and served as a Yavapai County Deputy Sheriff from that date until July 9, 2010.

2.　　On June 9, 2010, Lawrence was observed by a sergeant walking with a slight limp due to an injured toe. Lawrence told the sergeant that he had seen a doctor in Phoenix and he was fine. The sergeant informed Lawrence that he needed a doctor's clearance to return to work.

3.　　On June 11, 2010, Lawrence provided a doctor's release from the VA Hospital in Prescott. The sergeant conducted an administrative investigation over the discrepancy between Lawrence's earlier statements that he had seen a doctor in Phoenix and the provision of a doctor's note from Prescott.

-1-

1    4.    During the interview, Lawrence stated that he had seen a person in Phoenix that

2  he believed to be a nurse at the apartment complex swimming pool where he had injured his foot.

3  He did not actually see a doctor until required to do so in Prescott later.

4    5.    Lawrence offers the following statement on his own behalf: "Over the last year

5  I've been dealing with personal issues of divorce and child custody issues. I requested on several

6  occasions for time off in order to be able to deal with these issues and the stresses I had going on

7  in my personal life at the time. Due to lack of personnel I couldn't be granted the time I

8  requested.   My actions were out of character for me and go against my personal beliefs. I was

9  previously in the military for 12 years and honesty and integrity are very important to me and

10  what I stand for. My actions that day went against my beliefs and can I can only say I made a

11  mistake. A mistake that I know I would never make again. As police officers our power is

12  entrusted and given to us by the people of our communities. It was not my intention to purposely

13  be dishonest at the time I was questioned. I believe the personal issues that were occurring at the

14  time of the incident were a contributing factor to my actions."

15                          **II. STIPULATED CONCLUSIONS OF LAW**

16    The conduct described in the Findings of Fact violates the following administrative rules:

17  R13-4-109(A)(8), malfeasance, misfeasance, or nonfeasance in office; and, R13-4-109(A)(9)

18  engaging in conduct or a pattern of conduct that tends to disrupt, diminish, or otherwise

19  jeopardize public trust in the law enforcement profession, and is grounds upon which the Board

20  may suspend or revoke certification.

21                                  **III. AGREEMENT**

22    1.    Respondent waives the hearing and any appeal or judicial review of the action

23  agreed to herein.

24

25

-2-

**PLADISC  383**

2.      Respondent understands that the public records law and open meeting law apply to Arizona POST. Nothing in this agreement shall be interpreted to accord secrecy to the records of POST above and beyond that already required by law.

3.      The parties agree that the Board may impose a sanction of suspension of peace officer certification from July 9, 2010 until January 9, 2011 .

4.      No provision of this agreement is effective unless and until it is adopted by the Board. In the event that the Board rejects this agreement, no factual or legal assertions may be made in reliance upon any term or provision of this agreement by either party.

5.      Respondent understands that he has the right to consult with and be represented by an attorney concerning this agreement and any POST proceedings. He avows that he has either done so or waives the right to counsel.


_____          _____
Bryan J. Lawrence,                              11/23/2010
Respondent                                         DATE


_____          _____
Diana Stabler, Assistant Attorney General      11-24-2010
Attorney for the State of Arizona              DATE


## DECISION AND ORDER

Arizona POST hereby adopts the above Findings of Fact, and Conclusions of Law. Based on the foregoing Findings of Fact and Conclusions of Law, the Board hereby issues the following Decision and Order, which is effective from the date it is signed by the Executive Director on behalf of the Board. In issuing the Order, the Board considers its obligations to

-3-

# Ex   H

# STATE OF ARIZONA
# PINAL COUNTY

## STATEMENT OF DISCIPLINARY CHARGES

EMPLOYEE NAME:     Richard Mueller
TITLE:             Deputy Sheriff
DEPARTMENT:        PCSO
DATE(S) OF VIOLATION:   August 7, 2010

| | | | |
|---|---|---|---|
| CHARGE 1 | PCSO | 2.3.1 | PERFORMANCE OF DUTY: Uniformed employees shall maintain a professional demeanor and shall perform their duties in a clam and firm manner acting together to assist and protect each other in maintaining law and order. |
| CHARE 2 | PCSO | 2.3.4 | INCOMPETENCE: Employees shall maintain competency to properly perform their duties and assume the responsibilities of their position. Incompetence may be demonstrated by, but is not limited to: Lack of knowledge of the application of laws required to be enforces. Failure to take appropriate action on the occasion of a crime, disorder, or other condition deserving police attention. |
| CHARGE 3 | PCSO | 2.3.3 | DUTIES OF ALL EMPLOYEES: All employees shall be familiar with and conform to the policy and procedures of PCSO as stipulated in this manual. |
| CHARGE 4 | MR | 12.C.1 | THE EMPLOYEE DOES NOT DEMONSTRATE SUFFICIENT COMPETENCY OR EFFICIENCY TO PERFORM ASSIGNED DUTIES AND RESPONSIBILITIES. |
| CHARGE 5 | MR | 12.C.8 | THE EMPLOYEE, THROUGH NEGLIGENCE OR WILLFUL MISCONDUCT HAS CAUSED DAMAGE TO PUBLIC PROPERTY. |
| CHARGE 6 | MR | 12.C.9 | THE EMPLOYEE HAS ENGAGED IN CONDUCT ON OR OFF DUTY THAT IS OF SUCH A NATURE THAT IT WOULD TEND TO BRING DISCREDIT TO THE COUNTY. |
| CHARGE 7 | MR | 12.C.25 | ANY IMPROPER CONDUCT OR PERFORMANCE OF SUCH SEVERITY AS IT CONSTITUTES CAUSE FOR DISCIPLINARY ACTION. |

**SPECIFICATION:**

On August 7, 2010, Deputy Richard Mueller #1918 conducted a traffic stop. The suspect fled on foot toward an apartment complex. A concerned citizen informed Deputy Mueller that she had seen the suspect run to the apartment complex.

Deputy Mueller arrived at the apartment complex and observed a black male run into an apartment and close the front door. Deputy Mueller was unable to identify the black male as his suspect from the traffic stop. Mueller and several police officers surrounded the apartment, knocked and announced presence, but received no reply from within the residence.

Officer ████████ detected the odor of burning marijuana, but could not detect the location of the burning marijuana. Officer ████████ asked Deputy Mueller if he could smell the odor and Deputy Mueller acknowledged that he could smell the odor, admitting later to his supervisor that he did not smell marijuana. Acting on Officer ████████ determination, and based on Deputy Mueller belief that a felony is being committed, he forces entry into the apartment. Both occupants are removed at gun point from the residence and a security sweep is conducted. Neither the suspect that had fled from Deputy Mueller's traffic stop or illegal drugs were found in the apartment. However, both residences were arrested on misdemeanor warrants and booked into Pinal County Adult Detention Center.

**CONCLUSION:**

Deputy Mueller failed in several areas when making his decision. Deputy Mueller's probable cause for making entry under exigent circumstances was unfounded; he could not identify the person who entered the apartment as his earlier suspect; by his own admission (made later to his supervisor), he did not smell the odor of marijuana from the residence; and the severity of the suspected crime itself did not support a warrantless entry to a private residence. Finally, Deputy Mueller failed to consult with his supervisor, knowing she was on scene.

This shows a clear lack of understanding PCSO Policy, constitutional rights, and established case law on Deputy Mueller's part. He became over zealous and lost his ability to make sound judgment. This lack of judgment placed the citizens of Pinal County, the other deputies and officer working with him in harms way, while placing the Sheriff's Office in a position of great risk and liability.

Deputy Mueller violated Pinal County Sheriff's Office policies 2.3.1, 2.3.3, and 2.3.4, as well as Pinal County Merit Rule 12.C.1. 12.C.8, 12.C.9, and 12.C.25.

Deputy Mueller will serve a 20 hour suspension without pay and be required to attend AZPOST Search and Seizure class.

2

# Ex I

1  **KENT VOLKMER**
   **PINAL COUNTY ATTORNEY, SBN#00003800**
2  James Mitchell
   Deputy County Attorney
3  State Bar No. 029771
   James.Mitchell@pinalcountyaz.gov
4  Post Office Box 887
   Florence, AZ  85132
5  Telephone (520) 866-6271
   Attorney for Pinal County
6

7

8  **IN THE SUPERIOR/KEARNY JUSTICE COURT OF THE STATE OF ARIZONA**

9  **IN AND FOR THE COUNTY OF PINAL**

10

11 THE STATE OF ARIZONA                    |  NO. CM2017000057

12                    Plaintiff,            |  **NOTICE OF DISCLOSURE**

13 vs.                                      |

14    **RICHARD MANRIQUEZ,**                |  (Honorable Larry Bravo)

15                    Defendant,            |

16         COMES NOW the State of Arizona, by and through the Pinal County Attorney, KENT

17 VOLKMER, and his undersigned Deputy County Attorney, and hereby NOTIFIES THE

18 COURT and the defendant of the disclosure for the defendant of the following information on

19 the date set forth hereinafter: <u>COPY OF OFFICER INTEGRITY DOCUMENTS.</u>

20         RESPECTFULLY SUBMITTED this ___17___ day of ___July___ 2017.

21

22                                         **KENT WOLKMER**
                                           **PINAL COUNTY ATTORNEY**
23

24                                         By: _____

25                                              James Mitchell
                                                Deputy County Attorney
26

27

28

**PLADISC 412**

1   COPIES of the foregoing emailed on this ___17___ day

2   ___July___ 2017 to:

3

4   Honorable Larry Bravo
    Superior/Kearny Justice Court

5

6   MARTIN BIHN
    COUNSEL FOR DEFENDANT
    mbihn@phxlegal.com

7

8   By:

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

2

STATE OF ARIZONA
PINAL COUNTY

STATEMENT OF DISCIPLINARY CHARGES

EMPLOYEE NAME:        Richard Mueller
TITLE:               Deputy Sheriff
DEPARTMENT:          PCSO
DATE(S) OF VIOLATION:  August 7, 2010

CHARGE 1    PCSO   2.3.1    PERFORMANCE OF DUTY: Uniformed employees
                            shall maintain a professional demeanor and shall
                            perform their duties in a clam and firm manner acting
                            together to assist and protect each other in
                            maintaining law and order.

CHARE 2     PCSO   2.3.4    INCOMPETENCE: Employees shall maintain
                            competency to properly perform their duties and
                            assume the responsibilities of their position.
                            Incompetence may be demonstrated by, but is not
                            limited to: Lack of knowledge of the application of
                            laws required to be enforces. Failure to take
                            appropriate action on the occasion of a crime,
                            disorder, or other condition deserving police
                            attention.

CHARGE 3    PCSO   2.3.3    DUTIES OF ALL EMPLOYEES: All employees
                            shall be familiar with and conform to the policy and
                            procedures of PCSO as stipulated in this manual.

CHARGE 4    MR     12.C.1   THE EMPLOYEE DOES NOT DEMONSTRATE
                            SUFFICIENT COMPETENCY OR EFFICIENCY
                            TO PERFORM ASSIGNED DUTIES AND
                            RESPONSIBILITIES.

CHARGE 5    MR     12.C.8   THE EMPLOYEE, THROUGH NEGLIGENCE OR
                            WILLFUL MISCONDUCT HAS CAUSED
                            DAMAGE TO PUBLIC PROPERTY.

CHARGE 6    MR     12.C.9   THE EMPLOYEE HAS ENGAGED IN CONDUCT
                            ON OR OFF DUTY THAT IS OF SUCH A
                            NATURE THAT IT WOULD TEND TO BRING
                            DISCREDIT TO THE COUNTY.

CHARGE 7    MR     12.C.25  ANY IMPROPER CONDUCT OR
                            PERFORMANCE OF SUCH SEVERITY AS IT
                            CONSTITUTES CAUSE FOR DISCIPLINARY
                            ACTION.



**PINAL COUNTY**                                **SHERIFF'S OFFICE**

**PAUL BABEU**
*Sheriff*

### Professional Standards Unit
### Case Number, 2012-068

**Employee Concerned:** Deputy Richard Mueller #1918

**UNFOUNDED:** When the investigation discloses that the alleged acts did not occur or did not involve Office personnel. Additionally, complaints that are determined to be frivolous will fall within the classification of unfounded.

**EXONERATED:** When the investigation discloses that the alleged act occurred, but that the act was justified, lawful and/or proper.

**NOT SUSTAINED:** When the investigation discloses that there is insufficient evidence to sustain the complaint or fully exonerate the employee.

**SUSTAINED:** When the investigation discloses sufficient evidence to establish that the act occurred and that it constituted misconduct. Evidence in a sustained complaint will be weighed by a preponderance of the factual evidence.

<u>Allegation #1:</u>
  While off-duty at the Firehouse bar in Tempe, Mueller was impaired and engaged in aggressive, threatening and disruptive behavior towards another patron and the manager near the front door area of the bar. Mueller used profanities and made threatening and intimidating statements towards both the patron and the manager. His conduct caused a disturbance to the business operation and resulted in him being asked to leave the bar and the police being called.

**PCSO Policies: 340.3(a)(b)(k)(m); 340.3.2(a)(f)(k); 340.3.5(o)(z)(aa)**

UNFOUNDED:_____  EXONERATED:_____  NOT SUSTAINED:_____  SUSTAINED: ✓___



**PINAL COUNTY**                                      **SHERIFF'S OFFICE**

**PAUL BABEU**
*Sheriff*

---

### Allegation #2:

        After being asked to leave, after the bar staff went back inside, Mueller hit or struck the front door in some manner.

PCSO Policies: 340.3 (m); 340.3.5(o)(aa)

UNFOUNDED:_____     EXONERATED:_____     NOT SUSTAINED: √_____     SUSTAINED:_____

### Allegation #3:

        Around 20 minutes later, after the bar was closed, Mueller engaged in disruptive, aggressive and threatening behavior with the male patron to the rear area of the bar. One of the male patron's female friends attempted to intervene and stop the incident from escalating, but Mueller didn't leave and punched the male patron in the face/head area.

PCSO Policies: 340.3(a)(b)(k)(m); 340.3.2(a)(k); 340.3.5(o)(z)(aa); 388.2

UNFOUNDED:_____     EXONERATED:_____     NOT SUSTAINED:_____     SUSTAINED: √_____

### Allegation #4:

        When security became aware of the situation and attempted to contact Mueller, instead of waiting for the police to arrive, he ran away and fled the area.

Policy Policies: 340.3(b)(m); 340.3.5(o)(aa); 388.5

UNFOUNDED:_____     EXONERATED:_____     NOT SUSTAINED:_____     SUSTAINED: √_____



**PINAL COUNTY**                                            **SHERIFF'S OFFICE**

---

**PAUL BABEU**
*Sheriff*

**Allegation #5:**
    While running and fleeing the scene, Mueller saw a Mounted Police Officer and ran from the police officer as well. Mueller denied seeing the Mounted Police Officer when speaking to Tempe Police Officers that night and denied seeing the Mounted Police Officer during his Internal Affairs Interview.

PCSO Policies: 340.3(a)(b)(k)(m); 340.3.5(e)(g)(o)(aa); 388.5

UNFOUNDED:_____    EXONERATED:_____    NOT SUSTAINED:_____    SUSTAINED: ✓_____

**Allegation #6:**
    Mueller ran to a nearby parking garage where his personal vehicle was parked. Mueller sat in the driver's seat and put his key in the ignition, which put him in actual physical control of the vehicle while he was impaired.

PCSO Policies: 340.3(a)(b)(k)(m); 340.3.5(o)(z)(aa)

UNFOUNDED:_____    EXONERATED:_____    NOT SUSTAINED: ✓_____    SUSTAINED:_____

**Allegation #7:**
    When Mueller learned that he was going to be cited for Disorderly Conduct, he became argumentative and disrespectful with the Sergeant and Officers at the scene. He made various comments that implied he should receive favor or special treatment due to his status as a law enforcement officer. He implied that if the incident would have occurred in the jurisdiction he worked, that he would make it go away. Mueller engaged in conduct unbecoming a law enforcement officer and/or conduct that would tend to reflect poorly on law enforcement and the Pinal County Sheriff's Office.

PCSO Policies: 340.3(a)(m); 340.3.2(h); 340.3.5(e)(f)(g)(h)(o)(aa); 388.5

UNFOUNDED:_____    EXONERATED:_____    NOT SUSTAINED:_____    SUSTAINED: ✓_____

Ex  J

1
2

<div style="text-align:center">

**BEFORE THE**

**ARIZONA PEACE OFFICER STANDARDS AND TRAINING BOARD**

</div>

3

| | |
|---|---|
| Arizona Peace Officer Standards<br>and Training Board<br><br>      Complainant<br><br>v.<br><br>RICHARD H. MUELLER,<br>An inactively certified peace officer,<br><br><br>      Respondent | No. 13-003-POST<br><br>CONSENT AGREEMENT<br>DECISION AND ORDER |

10

11   In the interest of a prompt and speedy settlement of the above captioned matter,

12 consistent with the public interest, statutory requirements and the responsibilities of the Arizona

13 Peace Officer Standards and Training Board (AZ POST), and pursuant to A.R.S. §41-

14 1822(A)(3), 41-1822(D) and 41-1092.07(F)(5), the undersigned parties enter into this Consent

15 Agreement as a final disposition of this matter.

16

17          **I. STIPULATED FINDINGS OF FACT**

18   1.  Respondent Richard H. Mueller became a certified peace officer on May 28,

19 2009, and worked as a Pinal County Sheriff's Deputy from that time until January 4, 2013.

20   2.  On October 12, 2012, Mueller engaged in multiple altercations while off duty at

21 the Firehouse Bar and Grill in Tempe, Arizona.

22   3.  Mueller was loud and disruptive inside the bar. His behavior inside culminated

23 in a verbal altercation with another patron, Mr. PB.

24   4.  Mueller was in front of the bar when security staff reported a fight to the bar

25 manager, Mr. JR. JR went to the front and observed Mueller "antagonizing" PB, whom JR

1    described as "a smaller male." JR identified himself as the bar manager and asked Mueller to

2    leave the area. Mueller used profanities toward JR, and threatened to "beat his ass."

3         5.    Bar staff called Tempe Police, but cancelled the call when Mueller appeared to

4    leave the area.

5         6.    Approximately 15 minutes later, Mueller and PB got into a third altercation, this

6    time behind the bar. Security footage shows the two walking from the alleyway and then facing

7    each other as if to fight. A woman can be seen stepping between the two men. PB then walks a

8    few feet away but then turns around and walks toward Mueller. As he gets closer, Mueller puts

9    out his hand. PB swipes the hand down at which time Mueller punches him in the face.

10         7.    Mueller ran from the location. Responding officers located him sitting in his car

11    in a nearby parking garage. He was rude and disrespectful toward officers and mentioned

12    "professional courtesy." Mueller was cited for disorderly conduct/fighting and released. He

13    entered into a plea agreement on March 27, 2013, and has completed an adult diversion program.

14    The criminal charge was dismissed.

15         8.    During the internal affairs investigation, Mueller was forthright, admitting his

16    behavior. He stated that with respect to the third altercation, he saw a man urinating in the alley

17    and yelled at him to stop. He then realized it was the same man he had been arguing with earlier

18    inside and in the front of the bar. He said he tried to walk away but PB followed him and took an

19    aggressive posture. Mueller said he held out his arm to keep PB away from him and PB slapped

20    his hand out of the way. Mueller reacted in self-defense and punched PB. These statements are

21    consistent with the video.

22                  **II. STIPULATED CONCLUSIONS OF LAW**

23         The conduct described in the Findings of Fact violates the following administrative rules:

24    R13-4-109(A)(8), malfeasance, misfeasance, or nonfeasance in office; and, R13-4-109(A)(9)

25    engaging in conduct or a pattern of conduct that tends to disrupt, diminish, or otherwise

1  jeopardize public trust in the law enforcement profession, and is grounds upon which the Board

2  may suspend or revoke certification.

3  <center>**III. AGREEMENT**</center>

4    1.    Respondent waives any right to hearing and any appeal or judicial review of the

5  action agreed to herein.

6    2.    Respondent understands that the public records law and open meeting law apply

7  to Arizona POST. Nothing in this agreement shall be interpreted to accord secrecy to the records

8  of POST above and beyond that already required by law.

9    3.    The parties agree that the Board may impose a two year suspension of peace

10  officer certification from January 4, 2013 until January 4, 2015.

11    4.    No provision of this agreement is effective unless and until it is adopted by the

12  Board. In the event that the Board rejects this agreement, no factual or legal assertions may be

13  made in reliance upon any term or provision of this agreement by either party.

14

15  _____        01-24-14

16  Richard H. Mueller,                                    DATE
    Respondent

17

18  _____        01/25 ---- 2014 ͯ·ᵉ
                                                       DATE
19  Kathryn R. E. Baillie,
    Attorney for Respondent

20

21  _____        01-28-14

22  Diana Stabler, Asst Attorney General        DATE
    Attorney for the State of Arizona

23  <center>**DECISION AND ORDER**</center>

24    Arizona POST hereby adopts the above Findings of Fact, and Conclusions of Law.

25  Based on the foregoing Findings of Fact and Conclusions of Law, the Board hereby issues the

<center>-3-</center>
<center>**PLADISC 441**</center>

1   following Decision and Order, which is effective from the date it is signed by the Executive

2   Director on behalf of the Board.  In issuing the Order, the Board considers its obligations to

3   fairly and consistently administer discipline and its burden to protect the public welfare and

4   safety, as well as all aggravating and mitigating factors presented by both parties.

5          IT IS ORDERED that Respondent's peace officer certification is hereby suspended for a

6   period of two years from January 4, 2013 until January 4, 2015.

7

8          ADOPTED at Open Meeting this 19th day of ___MARCH___, 2014.

9   ARIZONA PEACE OFFICER STANDARDS AND TRAINING BOARD

10

11

12  By: LYLE W. MANN,
    Executive Director

13

14

15

16

17

18

19

20

21

22

23

24

25